JUDGE CARTER

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

12 CV 1895

NAVILLUS CONTRACTING,

    Plaintiff,

- against -

LOCAL 46 METALLIC LATHERS UNION AND
REINFORCING IRON WORKERS,

    Defendant.

12 Civ. _____

**VERIFIED COMPLAINT**



Plaintiff, Navillus Contracting ("Navillus"), by its attorneys Paul Hastings LLP, alleges as follows:

1. This action is for a temporary restraining order, preliminary injunction, and permanent injunction, to restrain and enjoin Defendant Local 46 Metallic Lathers Union and Reinforcing Ironworkers ("Local 46") and its officers, agents, and employees, and all persons acting in concert or participation with them, from in any manner or by any means directing, calling, causing, authorizing, inducing, instigating, conducting, continuing, or engaging in any strike or other concerted slowdown, sit-in, or work stoppage, or concerted refusal to report for work or to accept or perform work assignments or any other concerted work stoppage, by or among the employees of Navillus. This action is brought under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, *et. seq.*, and 28 U.S.C. § 1331.

## PARTIES

2. Navillus is incorporated under the laws of the State of New York, with its principal place of business at 575 Fifth Avenue, New York, New York 10017.

3. Local 46, upon information and belief, is a labor organization within the

meaning of the Labor Management Relations Act and has its principal place of business at 1322 Third Avenue, New York, New York 10021.

## COLLECTIVE BARGAINING AGREEMENT

4. The Building Contractors Association (of which Navillus is a member) and Local 46 are parties to a collective bargaining agreement dated June 30, 2008 (the "Agreement"), the terms of which are effective July 1, 2008 through June 30, 2014.

5. Local 46 represents certain of Navillus' employees under the terms of the Agreement.

6. The Agreement, which is attached as Exhibit A, contains a "no-strike clause," which expressly forbids any strike or stoppage of work:

> The Union or its representatives shall not order a strike or stoppage of work, nor shall the Employees strike against any Employer, or collectively leave the work of an Employer...pending the adjustment of any existing disputes.

(*See* Article IX, p. 11.)

7. The Agreement also provides that all disputes between the parties arising under the Agreement are subject to the grievance and arbitration procedures contained in the Agreement. (*See* Article X, pp. 12-13.)

8. Under the Agreement, disputes between the parties are to be first submitted to a designated "Trade Board," and thereafter (if the Trade Board fails to reach a decision) to a neutral arbitrator:

> A Trade Board will be established consisting of three (3) members of the [Building Contractors] Association and three (3) members of the Union....The function of the Trade Board shall be the enforcement of this Agreement. It shall interpret the provisions and shall adjust all disputes arising here under....Its decisions shall be final and binding on the parties hereto...In every case, complaints and charges shall be presented to the Trade Board in writing...Upon request by any directly interest [sic] party, said

Trade Board shall meet within twenty-four (24) hours after a complaint or charge and shall render a decision as promptly as consistent with the circumstances...In the event of the failure of the Trade Board to reach a decision upon any complaint or charge brought before it, the matter shall be submitted to an impartial arbitrator to be mutually agreed upon by the parties.

Article X of the Agreement provides, in relevant part:

9. Under Article X, the Agreement also mandates that:

[T]here shall be no cessation of any work in connection with which there may be a complaint or charge, but that all work shall regularly proceed pending the decision of the Trade Board....

(*See* Article X, p. 13.)

## FACTS

10. Navillus is a superstructure contractor engaged in the World Trade Center Vehicle Security Center ("VSC") project. As part of the VSC project, Navillus bends and installs steel reinforcing bars ("rebar") to secure concrete at the World Trade Center site. This bending and installation work is performed by lathers. Navillus employees, who are members of Local 46, bend rebar. Navillus uses a subcontractor, PMC Rebar, to install rebar at the World Trade Center site. PMC Rebar has a contract with Local 46.

11. Pursuant to the Agreement, the cutting and bending of the steel is performed by lathers on the job site. (*See* Exhibit A, Article IX, p. 10.) The Agreement provides additionally that three men shall operate the bending machine, but that "upon the Request of the Employer, the Business Manager and Business Agent of Local 46 will meet to discuss the possibility of more or less than 3 Lathers on the Bending Machine...The request of the Employer may not be unreasonably withheld." (*Id.* at p. 12).

12. Navillus determined recently that it would be unsafe to bend rebar at the World Trade Center site because the site is extremely congested and there is no space on-site for

a dedicated bending yard with proper logistics to support a safe and efficient operation. Upon information and belief, at least three other contractors at the World Trade Center site are bending rebar off-site for safety reasons.

13. Because of the safety and space issues, Navillus established an off-site bending facility in Sayreville, New Jersey that has adequate space and equipment to safely and efficiently move and bend rebar.

14. Navillus also began to use a new, two-ended robotic bender to bend rebar. The new machine is safer and more efficient than the previous equipment being used and requires two lathers to operate it.

15. On February 29, 2012, Navillus, through Project Manager Kevin Smith, informed Terrence Moore, Business Manager of Local 46, that due to worker safety concerns associated with bending and handling the rebar at the congested World Trade Center site, Navillus had set up an off-site bending facility and would continue to utilize Local 46 workers to operate the bending machines. A copy of the February 29, 2012 letter is attached as Exhibit B.

16. On March 1, 2012, Mr. Smith attempted to set up an in-person meeting at the World Trade Center site with Mr. Moore to discuss the off-site facility and new robotic bender issues. Mr. Smith's attempts were unsuccessful.

17. Thereafter, Navillus employees who are members of Local 46 were assigned to bend rebar at Navillus' off-site facility using the new robotic bender.

18. On March 7, 2012, Navillus, through undersigned counsel, renewed its request to Mr. Moore and John Skinner, President of Local 46, to discuss the off-site bending facility and requested a meeting to discuss using fewer than three lathers on the bending machine, as provided by the Agreement. A copy of the March 7, 2010 letter is attached as

a dedicated bending yard with proper logistics to support a safe and efficient operation. Upon information and belief, at least three other contractors at the World Trade Center site are bending rebar off-site for safety reasons.

13. Because of the safety and space issues, Navillus established an off-site bending facility in Sayreville, New Jersey that has adequate space and equipment to safely and efficiently move and bend rebar.

14. Navillus also began to use a new, two-ended robotic bender to bend rebar. The new machine is safer and more efficient than the previous equipment being used and requires two lathers to operate it.

15. On February 29, 2012, Navillus, through Project Manager Kevin Smith, informed Terrence Moore, Business Manager of Local 46, that due to worker safety concerns associated with bending and handling the rebar at the congested World Trade Center site, Navillus had set up an off-site bending facility and would continue to utilize Local 46 workers to operate the bending machines. A copy of the February 29, 2012 letter is attached as Exhibit B.

16. On March 1, 2012, Mr. Smith attempted to set up an in-person meeting at the World Trade Center site with Mr. Moore to discuss the off-site facility and new robotic bender issues. Mr. Smith's attempts were unsuccessful.

17. Thereafter, Navillus employees who are members of Local 46 were assigned to bend rebar at Navillus' off-site facility using the new robotic bender.

18. On March 7, 2012, Navillus, through undersigned counsel, renewed its request to Mr. Moore and John Skinner, President of Local 46, to discuss the off-site bending facility and requested a meeting to discuss using fewer than three lathers on the bending machine, as provided by the Agreement. A copy of the March 7, 2010 letter is attached as

Exhibit C. Local 46 did not respond to Navillus' requests.

19. On March 7, 2012, Mr. Smith met with Mr. Moore; Kevin Kelly, Business Agent for Local 46; and Patrick Mills, Navillus Safety Director, at the World Trade Center site. Mr. Moore indicated that Local 46 "had no interest" in bending rebar off-site and using the new robotic machine and that Local 46 lathers bending rebar at the off-site facility "should not be happening."

20. Upon information and belief, on March 9, 2012, Local 46 instructed its workers who had been bending rebar for Navillus not to report to work and to report instead to the union hall, and that the workers, in fact, did not report to work. Upon information and belief, Local 46 also instructed workers at the World Trade Center site not to install any bent rebar that was delivered on-site. Currently, rebar that arrived on site on March 9, 2012 remains uninstalled, despite Navillus' directions that the workers install the rebar immediately.

21. On March 9, 2012, Navillus sent another letter to Mr. Skinner and Mr. Moore to inform them that Navillus considered Local 46's actions to be an unlawful strike, partial strike, and/or slowdown in breach of Article IX of the parties' Agreement. Navillus reiterated its offer to discuss the parties' dispute and demanded that, pending resolution of the parties' dispute, Local 46's workers return to work immediately and those workers on the job cease from refusing to perform their job duties, which includes installing rebar. A copy of the March 9, 2012 letter is attached as Exhibit D.

22. The same day, Local 46, through its counsel Thomas M. Kennedy, informed Navillus that it disagreed with Navillus and refused to instruct its workers to bend rebar at Navillus' off-site facility. Local 46 did not address its directive to workers not to install bent rebar at the World Trade Center site.

23. Navillus responded to Local 46's March 9, 2012 letter the same day and again requested that Local 46 meet in-person with Navillus representatives on March 10 or March 12, 2012 to discuss these issues. A copy of Navillus' March 9, 2012 response to Local 46 is attached as Exhibit E.

24. On March 12, 2012, Local 46 informed Navillus that it was prepared to go to the Trade Board with the dispute, and advised Navillus that it should file a claim using the grievance procedures provided in the Agreement, or if need be, arbitration.

25. Local 46 continues to engage in a strike, partial strike, concerted refusal to work, and/or work stoppage in violation of the contractual no-strike clause contained in Article IX of the Agreement.

26. On March 14, 2012, Navillus submitted a complaint to the Trade Board regarding the dispute between the parties. A copy of Navillus' March 14, 2012 letter to the Trade Board is attached as Exhibit F.

27. This dispute is subject to the grievance and arbitration procedures contained in the Agreement because it concerns interpretation of the Agreement's terms and provisions.

28. Navillus initiated and stands ready and willing to proceed with the grievance and arbitration procedures provided for in the Agreement to resolve any and all disputes between Local 46 and Navillus, including the underlying dispute relating to bending rebar off-site and utilizing two lathers for its new bending machine.

29. Violation of the no-strike clause and interference with Navillus' operations in the VSC project will cause irreparable harm to Navillus, and delay or stop the VSC project.

30. Navillus has no adequate remedy at law.

31. No previous application has been made for the relief sought herein.

32. As to each item of relief sought, greater injury will be inflicted on Navillus by the denial thereof than will be inflicted on Local 46 by the granting of such relief; in fact, inasmuch as Navillus demands only that Local 46 be restrained from committing unlawful acts and be required to resolve the parties' dispute in accordance with the grievance and arbitration procedures mandated by the Agreement, no injury can result from the granting of the relief sought herein.

33. Navillus tenders itself ready and willing to file a bond or undertaking with this Court in favor of Local 46 which may be enjoined in this case in such amount as may be fixed or determined as reasonable by this Court sufficient to secure to the parties their Court costs and damages by reason of their being wrongfully enjoined or restrained.

WHEREFORE, Plaintiff Navillus prays:

(a) That this Court issue a temporary restraining order and preliminary injunction and that this Court make such an injunction permanent on final hearing requiring Local 46 to comply with the Agreement, to cease and desist from violation in any manner the no-strike clause of the Agreement, to disavow any such violation and to instruct its members who are employees of Navillus to refrain from any strike, partial strike, concerted refusal to work, work stoppages or related activities, and to submit to the grievance procedures before the Trade Board, and if need be, before an impartial arbitrator, as provided for under the Agreement.

(b) That Local 46, its agents, employees, representatives, officers and members, and all persons and organizations acting in combination and concert with them be

enjoined and restrained temporarily and permanently during the pendency of this action:

1. from calling, engaging in, conducting, sanctioning or assisting any strike or concerted work stoppage or work slowdown or other forms of cessation of normal work on the part of employees against Navillus; and

2. from causing or encouraging, or attempting to cause or encourage, any employees of Navillus to refuse to perform work or services for Navillus during the term of the Agreement, including bending and installing rebar for the VSC project, or to engage in or continue to engage in any strike or work stoppage of any kind against Navillus.

(c) That the Court issue an Order directing the Defendant to show cause, at such time and place as may be specified therein, why it should not be enjoined and restrained during the pendency of this action in accordance with the injunctive relief prayed for in paragraphs (a) and (b) above.

(d) That the Court retain jurisdiction of this action pending final outcome of such arbitration proceedings as may be ordered and directed pursuant to this prayer for the purposes of giving Navillus such other and further relief as may be necessary in order to achieve a result consistent with the objectives of the grievance and arbitration provisions of the aforesaid Agreement between Navillus and Local 46; and

(e) That this Court grant Navillus such other and further relief as to this Court may appear necessary and proper.

Dated: March 15, 2012

Respectfully submitted,

PAUL HASTINGS LLP

By: _____
    Zachary D. Fasman
    Allan S. Bloom

75 East 55th Street
New York, NY 10022-3205
(212) 318-6000

*Attorneys for Plaintiff*
NAVILLUS CONTRACTING

LEGAL_US_E # 97247883.3

# VERIFICATION OF COMPLAINT

I, Kevin Smith, declare, under penalty of perjury, that the following statements are true:

1. I am currently employed as Project Manager for Navillus Contracting ("Navillus"), and I am duly authorized to sign this Complaint on behalf of Plaintiff Navillus Contracting;

2. I have read the foregoing Complaint;

3. To the best of my knowledge, information, and belief, based on reasonable inquiry, the foregoing Complaint is well-founded in fact and is warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

4. The allegations and other factual contentions have evidentiary support or are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

5. The foregoing Complaint is not being filed for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

Executed on March 14, 2012

_____
Kevin Smith

Sworn to before me this 14th day of March, 2012

_____
Notary Public

FRANK NUNZIO D'AGOSTINO
Notary Public, State of New York
No. 01DA4996102
Qualified in New York County
Commission Expires May 11, 2014